UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| MICHAEL L. SCOTT and<br>LINDA A. LARKIN,<br><br>    **Plaintiffs,**<br><br>V.<br><br>**FIRST SOUTHERN NATIONAL BANK,**<br><br>    **Defendant.** | CIVIL ACTION NO. 5:16-281-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion for summary judgment by the Defendant and on a cross-motion for partial summary judgment by the Plaintiffs. [DE 66; 77.] For the reasons set forth below, the Court will **GRANT** Defendant's motion in full and **DENY** the Plaintiffs' cross-motion.

## BACKGROUND

On July 22, 2013, the parties to this action executed a commercial loan agreement ("the Construction Loan"). Per the terms of the agreement, Defendant First Southern was to loan Plaintiffs, Drs. Scott and Larkin, an amount not to exceed $1,013,519.00. In turn, Plaintiffs promised to repay all the funds advanced to them by First Southern. [DE 1, at 3.] The purpose of the Construction Loan was to finance the renovation of property in Cincinnati, Ohio. Specifically, Plaintiffs wished to turn a former hotel into residential apartments with store-fronts. As security for the loan, First Southern took mortgages on three of Plaintiffs' properties held in Kentucky and Ohio. [DE 1, at 3.]

1

The Construction Loan agreement came as a result of negotiations between Plaintiffs and First Southern's Community President, Rocky Mason. [DE 66-1, at 4.] Following the issuance of the Construction Loan, Mason continued to represent the bank in its dealings with the Plaintiffs. It is the nature of these communications between Plaintiffs and Mason that form the basis of this lawsuit. Plaintiffs maintain that First Southern, through Mason, promised to provide any additional funds needed to complete the hotel renovation project. [DE 1, at 4.] First Southern refutes this assertion. The Plaintiffs also claim that but for these assurances from Mason, they would have gone elsewhere to secure financing for the project. Plaintiffs have conceded, however, that no documentation exists for the guarantees allegedly made by Mason.

In November of 2013, Dr. Scott alerted Mason that as much as $400,000 in additional funding could be needed to complete the hotel renovation project. [DE 66-1, at 7; Text Communications, Exhibit 6, pg. 10-11.] In response, Mason informed Dr. Scott that after the contractor was chosen and bids were collected, he would "go to work for the new money." [DE 66-1, at 8; Text Communications, Exhibit 6, pg. 11.] After numerous exchanges between Dr. Scott and Mason regarding the new cost projections, Dr. Scott notified Mason that Rick Pansiera, the project architect, would send him the final cost estimate. And on February 21, 2014, Pansiera sent Mason a spreadsheet indicating that the total anticipated of cost of the project had ballooned to $1,654,648.86. [DE 66-1, at 8.]

A week later, Dr. Scott and Mason met in Cincinnati, Ohio to discuss the updated cost projections. It is disputed though, whether additional collateral for the proposed financing was discussed during the Cincinnati meeting. First Southern asserts that Dr. Scott refused to offer more collateral when Mason asked him whether he would do so. [DE 66-1, at 9.] Conversely, Plaintiffs

argue that the subject of additional collateral was never broached. And had it been brought up, Plaintiffs suggest that Dr. Scott was willing and able to provide the extra collateral. [DE 78, at 11.]

On March 8, 2014, Pansiera sent Mason a detailed breakdown of the request for additional funding and provided a narrative for the project change orders. [DE 78, at 11.] After receiving this information from Pansiera, Mason commenced a new underwriting process. As a part of this process, Plaintiffs' bookkeeper sent updated financials to First Southern regarding the Plaintiffs' other various businesses. [DE 66-1, at 10.] Moreover, Mason requested a new appraisal of the hotel property under renovation. [DE 78, at 11.]

On March 21, 2014, a senior analyst from First Southern retrieved the Plaintiffs' credit report at the request of Mason. [DE 78, at 12.] When the analyst viewed the report, she observed two new loans that Plaintiffs had taken from another financial institution, United Bank. [DE 66-1, at 11.] The analyst then brought the United Bank loans to the attention of Mason, who claims that at the time, he was unaware of their existence.

On March 31, 2014, First Southern advised Dr. Scott that it would not be lending the additional $640,000 needed to finish the hotel renovation project. [DE 66-1, at 12.] First Southern contends that given the additional, outstanding loans, the extension of more credit to the Plaintiffs would have been an imprudent business decision. Plaintiffs, however, have an alternate theory. They claim that the refusal was retribution for Dr. Scott using another institution, United Bank, to finance other business ventures. [DE 78, at 13.]

After receiving First Southern's refusal to furnish additional funds, Dr. Scott secured funding in the amount of $2,040,000 from United Bank. The stated purpose of this loan was to repay existing debt with United Bank, pay down all debt owed to First Southern, and to provide the necessary $640,000 to complete the hotel renovation project. For reasons that are disputed,

Plaintiffs failed to make the required payments on their line of credit with First Southern in July and August of 2014. As a consequence, First Southern's computer system automatically reported the two payment delinquencies to Equifax. [DE 66-1, at 14.] Even after the line of credit with First Southern was completely paid down in September of 2014, the computer system, while showing the correct balance of zero, continued to note the prior delinquencies. [DE 66-1, at 14.]

As stipulated by the parties, Dr. Scott became aware of the impact of the delinquencies on his credit score on October 6, 2014. [DE 1, at 5.] On that same day, Dr. Scott sent a text message to Mason, informing him what had occurred. In response, Mason assured Dr. Scott that First Southern would "straighten [the reports] out immediately." [DE 78, at 20; DE 78, Exhibit K.] In attempting to resolve the problem, First Southern took a series of actions. First, the bank drafted a letter to Clarion Financial, an institution providing credit to the Plaintiffs' dental business, that "the credit agency was provided inadvertent inaccurate information and FSNB [is] making corrections to update the credit bureau's file." [DE 78, at 20.] Further, First Southern submitted two requests to the national credit reporting agencies to remove the past negative reporting. [DE 66-1, at 14.]

The parties spent much of October of 2014 trying to resolve the negative reporting issue. During this process, First Southern allegedly advised the Plaintiffs not to pull a credit report because doing so would further exacerbate their credit score problems. [DE 78, at 20.] In addition, in March of 2015, the Plaintiffs discovered that the negative reporting on their credit score had not been corrected. [DE 78, at 21.] By this time, Plaintiffs were represented by counsel. On March 4, 2015, Plaintiffs' attorney sent a letter to First Southern advising the bank that the issue had still not been resolved. The attorney sent First Southern a second letter on June 11, 2015 and a third on

August 20, 2015. Throughout this process, however, neither the Plaintiffs nor their attorney, reported the discrepancies directly to a credit reporting agency.

On July 11, 2016, Plaintiffs filed this action in Fayette Circuit Court bringing claims for: willful, or in the alternative, negligent violations of the Fair Credit Reporting Act; breach of the duty of good faith and fair dealing; fraudulent misrepresentation; and tortious interference with business relationships. [DE 1.] The action was removed to this Court on August 1, 2016 and the parties have since moved for summary judgment pursuant to Fed. R. Civ. P. 56.

## ANALYSIS

Defendant First Southern has now moved for summary judgement on all five counts asserted in Plaintiffs' Complaint [DE 66.] As to Counts I and II, First Southern contends that the FCRA claims must be dismissed since the Plaintiffs have not satisfied the required element of filing the dispute with a credit reporting agency. Second, First Southern argues that Plaintiffs' claim for breach of duty of good faith and fair dealing (Count III) is preempted by the FCRA and therefore, must be dismissed. Further, First Southern asks this court to dismiss Count IV arguing that Plaintiffs have failed to satisfy the essential elements of a fraudulent misrepresentation claim under Kentucky law. And lastly, as to Count V, First Southern maintains that Plaintiffs' tortious interference claims are also preempted by the FCRA. [DE 66-1.]

In addition to responding to First Southern's motion for summary judgment, Plaintiffs cross-motioned for partial summary judgment as to their claim that First Southern breached its duty of good faith and fair dealing. [DE 78.] In support of this cross-motion, Plaintiffs argue that no genuine issues of material fact exist as to whether First Southern's interactions with the Plaintiffs constituted a breach of that duty. For the reasons set forth below, the Court **GRANTS** Defendant's motion wholesale while **DENYING** the Plaintiffs' cross-motion.

**I.     The Standard of Review**

Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The movant can satisfy its burden by demonstrating an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). Further, "[s]ummary judgment is only appropriate when the non-moving party fails to establish a genuine issue of material fact on an essential element to his case and on which he would bear the burden of proof at trial." *Balas v. Leishman-Donaldson*, 976 F.2d 733 (6th Cir. 1992) (citing *Celotex*, 477 U.S. at 322). The Court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II.    Plaintiffs' FCRA Claims**

Plaintiffs, Drs. Scott and Larkin, assert two claims under the Federal Credit Reporting Act, 15 U.S.C. § 1681. First, Plaintiffs allege willful noncompliance with 15 U.S.C. § 1681s-2(b). Specifically, Plaintiffs claim that First Southern willfully gave inaccurate information to a credit reporting agency and then failed to correct the faulty reporting in a timely fashion. In the alternative, Plaintiffs allege negligent noncompliance with the reporting requirements of 15 U.S.C. § 1681s-2(b). Because the Plaintiffs failed to file their dispute with a credit reporting agency as required by § 1681s-2(b), their FCRA claims must be dismissed as a matter of law.

There are two distinct components of 15 U.S.C. § 1681s–2. The first, subsection (a), advances a "duty of furnishers of information to provide accurate information." § 1681s–2(a). This section, however, is only enforceable by the government. § 1681s–2(d). Accordingly, courts have

repeatedly recognized that no private action exists under § 1681s–2(a). *See Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 780 (W.D. Ky. 2003).

The second component, subsection (b), enumerates the "duties of furnishers of information upon notice of dispute," § 1681s–2(b). Unlike subsection (a), the enforcement of subsection (b) is not limited to the government. As a result, courts have concluded that § 1681s–2(b) provides a private right of action against a furnisher of credit information for willful, § 1681n, or negligent, § 1681o, violations of the FCRA. *Stafford*, 262 F. Supp. 2d at 783.

The duties of § 1681s–2, however, hinge upon the furnisher "receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." § 1681s–2(b). "This means that a furnisher of credit information, such as the [b]ank, has no responsibility to investigate a credit dispute until after it receives notice from a consumer reporting agency." *Stafford*, 262 F. Supp. 2d at 784. Put succinctly, "notification from a consumer is not enough" to satisfy the requirements of the statute. *Id.*

The Plaintiffs admit that they failed to notify the credit reporting agencies of the alleged false reports issued by First Southern. [DE 78, at 23.] As such, the duties of First Southern as a furnisher were never triggered. Thus, Plaintiffs have failed to satisfy the elements needed to bring an action under § 1681s–2(b).

While the Plaintiffs admit their failure to contact a credit reporting agency, they raise a novel argument in an attempt to circumvent the inevitable. Specifically, Plaintiffs purport that they should be excused from the statutory requirement since First Southern assured them that the credit reporting problem would be taken care of. [DE 78, at 20.] Plaintiffs further claim that First Southern actively prevented contact with a credit reporting agency in warning the Plaintiffs of the

consequences of pulling a credit report at the time. The Plaintiffs do not cite any caselaw for their position, instead relying on the assertion that the general purpose of the FCRA precludes First Southern from having "its cake and eating it too." [DE 78, at 24.]

The Plaintiffs' arguments are without merit. Neither the statute, § 1681s–2(b), nor the case law supports their position. Moreover, by as early as March of 2015, Plaintiffs were represented by counsel. [DE 78, at 21.] Given the alleged failures of First Southern to correct the negative reporting issues after repeated requests to do, Plaintiffs had reason to contact the credit reporting agencies directly. The Plaintiffs, through counsel, also had a mechanism for doing so. In sum, since the Plaintiffs failed to file their dispute with the credit reporting agencies directly, there is no genuine issue of material fact as to the FCRA claims. Counts I and II of the Complaint are dismissed accordingly.

### III. Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Under Kentucky Law

Count III of the Plaintiffs' Complaint alleges a breach of the implied duty of good faith and fair dealing under Kentucky law. [DE 1.] First Southern argues that the claim must be dismissed as it is preempted by the FCRA. The Court agrees.

The FCRA contains "overlapping and potentially contradictory preemption provisions." *Morgan v. HSBC Mortg. Servs., Inc.*, 930 F. Supp. 2d 833, 838 (E.D. Ky. 2013) (citing *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 843 (E.D. Mich. 2010)). This is because on one hand, the original preemption provision, § 1681(h)(e), permits state law tort claims, but requires a higher standard of proof for those claims involving defamation, slander, or invasion of privacy. And on the other hand, the more recently enacted provision, § 1681t(b)(1)(F), precludes *all* state law claims covered by § 1681s–2.

The Sixth Circuit has not yet reached a decision on how these provisions ought to be read together. *Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 548 (6th Cir. 2012) ("We have not yet decided whether section 1681h(e)'s exception for claims alleging malice or willful intent has been overridden by section 1681t(b)(1)(F), which was enacted later."). The Sixth Circuit is not alone. Other federal circuits have also largely remaining silent on the issue. *In re Tomlin*, No. 15-20852, 2016 WL 1317412, at *12 (Bankr. E.D. Ky. Mar. 31, 2016) (citing Randall D. Quarles, *Splintered District Courts Continue to Struggle with Federal Preemption of Credit–Reporting Claims*, 27 BANKING & FIN. SERVS. POL'Y REP. 8, 8 (2008)). In filling this void, district courts have adopted several different theories of interpretation. The Plaintiffs here suggest that the Court adopt the "statutory approach" whereby § 1681t(b)(1)(F) operates to preempt claims brought under state statute and 1681h(e) operates only to preempt state tort claims. [DE 78, at 26.] *See Miller v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 23099 (W.D. Ky. Mar. 24, 2008). The Court declines the Plaintiffs' invitation to follow the statutory approach. Instead, the Court will follow the trend of recent decisions from this district in finding that the two statutory provisions are compatible and should be construed by their terms. *See* Morgan, 930 F. Supp. 2d at, 837 (E.D. Ky. 2013); *In re Tomlin*, 2016 WL 1317412, at *13–14.

Therefore, in determining whether a state law cause of action is preempted under § 1681t(b)(1)(F), the Court must consider whether the action is related to "allegations that a furnisher provided inaccurate or incomplete information to a credit reporting agency or that a furnisher failed to correct inaccurate information." *In re Tomlin*, 2016 WL 1317412, at *12. In the instant case, it is apparent from the Complaint that Plaintiffs' breach of good faith and fair dealing claim is based on the alleged inaccurate reporting of the furnisher, First Southern—the precise type of conduct

regulated under § 1681s–2. [DE 78, at 9.] And since this subject matter is regulated by the FCRA, Count III is preempted and must be dismissed.[1]

## IV. Plaintiffs' Fraudulent Misrepresentation Claim

Plaintiffs contend that Mason made fraudulent misrepresentations as to whether the bank would finance the hotel renovation project through its completion, irrespective of additional costs. [DE 1, at 4.] For the reasons stated below, the Court finds that the Plaintiffs' fraudulent misrepresentation claim must be dismissed.

In their respective submissions to the Court, the parties spar over whether, pursuant to the Kentucky law, the specific elements of fraud have been proven by clear and convincing evidence. [DE 66; 78.] These arguments, however, miss the mark. Instead, the Court must evaluate whether the Kentucky Statute of Frauds bars the misrepresentation claim in the first instance.

The Kentucky Statute of Frauds, KRS § 371.010, reads as follows:

> . . .
>
> (9) Upon any promise, contract, agreement, undertaking, or commitment to loan money, to grant, extend, or renew credit, or make any financial accommodation to establish or assist a business enterprise or an existing business enterprise including, but not limited to the purchase of realty or real property, but this subsection shall not apply to agreements pursuant to which credit is extended by means of a credit card or similar device, or to consumer credit transactions;
>
> unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent. It shall not be necessary to express the consideration in the writing, but it may be proved when necessary or disproved by parol or other evidence.

---

[1] Because Count III is preempted by the FCRA, the Court will not address the parties' arguments as to the underlying merits of the claim.

According to a strict reading of the statute, an oral promise to extend credit in Kentucky is unenforceable. Such an interpretation was upheld by the Kentucky Supreme Court in *Scott v. Forcht Bank*, NA, 521 S.W.3d 591, 595 (Ky. Ct. App. 2017). In that case, the plaintiff sued the defendant bank for detrimental reliance after it refused to issue additional funds for a renovation project. *Id.* at 594. Specifically, the plaintiff claimed that the bank had made oral assurances that it would issue additional funds. *Id.* The trial court found that the claims were barred by the Kentucky statute of frauds since the promise to extend the credit was not made in writing. *Id.* The trial court dismissed the case and the plaintiff appealed. *Id.*

On appeal, the plaintiff-appellant maintained that the trial court erred in dismissing the claim under the statute of frauds. *Id.* at 595. Of note, he argued that the bank should be estopped from pleading the statute of frauds defense since it was the oral promises to extend additional funds that convinced him to agree to borrow from the defendant in the first place. *Id.* at 596. The Kentucky Supreme Court rejected this argument. *Id.*

In the instant case, the Court construes the alleged assurances of Mason to extend the necessary completion funds as promises to "grant, extend, or renew credit." *See* KRS § 371.010. And pursuant to *Scott*, to be enforceable, these alleged assurances must have been memorialized in writing. 521 S.W.3d at 595. There is no genuine dispute here, however, since Plaintiffs concede that there is no written evidence of Mason's purported commitments. [Scott Depo Exhibit 1; Larkin Depo Exhibit 2]. Consequently, their claim for fraudulent misrepresentation is barred by the Kentucky state of frauds and is dismissed accordingly.

V.   **Tortious Interference Claims**

Applying the same analysis as above, since the tortious interference claims are related to allegations that First Southern provided faulty information to a credit reporting agency and/or

failed to correct that misinformation, they are preempted by the FCRA. *In re Tomlin*, 2016 WL 1317412, at *12. Thus, Count V is also dismissed.

### CONCLUSION

Court hereby **ORDERS** the following:

(1) Defendant's Motion for Summary Judgement (DE 66) is **GRANTED**.

(2) Plaintiffs' cross-motion for partial summary judgment (DE 78) is **DENIED**.

(3) Plaintiffs' Motion for Oral Argument (DE 91) is **DENIED** as moot. The Court has examined the case attached to the motion and concludes that the case would not change the Court's decision on the summary judgment motions.

(4) A judgment consistent with this Opinion and Order will be entered contemporaneously.

Dated September 24, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY